UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re ) Case No. _____
 )
 )
 ) **Notice of Motion for Relief**
 ) **From (Check All That Apply):**
 ) ☐ **Automatic Stay in a Chapter 7/13 Case**
 ) ☐ **Chapter 13 Codebtor Stay**
Debtor(s) )

1. **YOU ARE NOTIFIED** that a motion was filed by _____, the moving party, for (Check all that apply):

   ☐ Relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 U.S.C. § 362.

   ☐ Relief from the stay protecting the codebtor and codebtor's property as provided by 11 U.S.C. § 1301. Codebtor's name and service address are: _____
   _____.

2. A copy of the motion is attached. The name and service address of the moving party's attorney (or moving party, if no attorney) are: _____
   _____.

3. If you wish to resist the motion, you must, within 14 days of the service date shown below, file the following with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E. 8th Ave. #2600, Eugene OR 97401:

   a. A written response that states the facts supporting the opposition to the motion by filling in the applicable "response" portions on a copy of the original motion. If the response will be electronically filed, the response must be prepared using the fillable pdf version of the original motion unless the motion was filed on paper and could not be electronically obtained from the movant; and

   b. A fully completed notice of hearing using Local Bankruptcy Form (LBF) 721, including the date and time of the hearing. Available hearing dates and times are posted at https://www.orb.uscourts.gov under the "Hearings" heading. If you do not have internet access, please call the court at (503) 326-1500 or (541) 431-4000 and press "0" to obtain the required forms and hearing information.

4. **Failure to Object or Serve Proper Notice of Hearing**. If you fail to file a timely response and notice of hearing, then the automatic stay may expire as to the debtor(s) pursuant to 11 U.S.C. § 362(e) and the stay protecting the codebtor may expire pursuant to 11 U.S.C. § 1301(d), or the court may sign an order without further notice, submitted by the moving party on LBF 720.90, granting relief from the debtor stay and/or codebtor stay.

**720 (12/1/2018)** Page 1 of 2

I certify that:

(1)  The motion was prepared using the fillable PDF version of LBF 720.80; and

(2) On _____ this notice and the motion were served on the debtor(s), any codebtor at the address listed above, the trustee, the U.S. Trustee, members of any committee elected pursuant to 11 U.S.C. § 705, and their respective attorneys.

_____
Signature of Moving Party or Attorney                           (OSB#)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| In re | Case No. _____ |
|---|---|
| | Amended |
| | |
| | **[*Check all applicable boxes*]** |
| | **CHAPTER 7/13 MOTION FOR RELIEF FROM**         Debtor       Chapter 13 Codebtor Stay |
| | **Filed by Movant:** |
| | _____ |
| | **Objection to Stay Motion filed by Respondent:** |
| Debtor | _____ |
| | * Fargo Auto |

*Instructions to movant: You must file this motion with a notice of motion on Local Bankruptcy Form (LBF) 720. See LBF 720.50, Procedures re: Motions for Relief from Stay, for more information.*

1. **Debt, Default, Other Encumbrances, Description and Value of Collateral** [*To be completed by movant*]

    a. Description of collateral [*e.g., car model, year, and VIN, or property address*]:

    b. Amount of debt: $ _____, consisting of principal of $ _____, interest of $ _____, and other:

    c. Description, amount, and priority of other encumbrances on collateral. If not known, include applicable information from debtor's schedules if available on PACER:

    Total debt secured by collateral [*1.b. + 1.c.*]: $ _____.

    d. Value of collateral: $_____.
    Equity in collateral: $_____, after deducting $_____ of liquidation costs.

    e. Current monthly payment: $_____.

    f. If Chapter 13:

        (1) $_____ postpetition default consisting of [*e.g., $ _____ payments, $_____ late charges, $ _____ fees*]:

    (2) $_____ prepetition default consisting of     amounts specified in proof of claim, or,     consisting of:

  g.  If Chapter 7, total amount of default: $_____ .

**OBJECTION** [*Identify specific items disputed and specify what you contend are the pertinent facts, including why there is a postpetition default, if applicable; to be completed by respondent*]:

2. **Relief from Stay Should be Granted Because:** [*Check all that apply; to be completed by movant*]:

    Lack of insurance on collateral.

    No equity in the collateral and the property is not necessary for an effective reorganization.

    Failure of debtor to make Chapter 13 plan payments to the trustee.

    Failure of debtor to make direct payments required by Chapter 13 plan.

    Other [*describe*]:

**OBJECTION** [*Specify why relief from stay should be denied. If respondent proposes to cure a postpetition default, detail the cure by attaching a proposed order using LBF 720.90 available at https://www.orb.uscourts.gov under Forms/Local Forms; to be completed by respondent*]:

3. **Background** [*To be completed by movant*)

  a.  Date petition filed: _____ Current Chapter: \_\_\_\_\_ (7 or 13)

    If 13, current plan date _____ Confirmed:     Yes     No

    If 13, treatment of movant's prepetition claim(s) in plan:

    If 7, debtor    has    has not stated on Official Form B 108 that debtor intends to surrender the collateral.

  b.  Movant has a lien on the collateral by virtue of [*check all applicable sections, see also paragraph 6 below*]:

    ☐ Security agreement, trust deed, or land sale contract dated _____ and any assignment of that interest to movant. The security interest was perfected as required by applicable law on _____.

    ☐ Retail installment contract dated _____ and any assignment of that interest to movant. The security interest was perfected on the certificate of title on _____.

    ☐ Other [*describe*]:

**OBJECTION** [*Identify any disputed items and specify the pertinent facts; to be completed by respondent*]:

4. **Request for Relief from Codebtor Stay** [*Chapter 13 only*]
    a. _____, whose address is _____ _____, is a codebtor on the obligation described above, but is not a debtor in this bankruptcy.

    b. Movant should be granted relief from the codebtor stay because [*check all that apply*]: ☐ codebtor received the consideration for the claim held by movant ☐ debtor's plan does not propose to pay movant's claim in full ☐ movant's interest would be irreparably harmed by continuation of the codebtor stay as a result of the default(s) described above ☐ because:

**OBJECTION** [*Identify any disputed items and specify the pertinent facts; to be completed by respondent*]:

5. **Other Pertinent Information** [*To be completed by movant, if applicable*]:

**OBJECTION** [*Identify any disputed items and specify the pertinent facts; to be completed by respondent*]:

**720.80 (12/1/2024)**                                        Page 3 of 5

6. **Relief Requested** [*Check all applicable sections*; *to be completed by movant*]:

   Movant requests relief from the automatic stay to allow it to foreclose its lien on the collateral and to take any necessary action to obtain possession of the collateral.

   Movant has a security interest in real property and requests relief from stay of an act against the collateral and that the relief be binding in any other bankruptcy case purporting to affect the collateral filed not later than 2 years after the date of the entry of an order granting this motion. [*If you check this box, you must complete paragraph 5 above to support this request. If you do not do so, the Court will not grant relief binding in any other bankruptcy case.*]

   Movant requests that the 14-day stay provided by FRBP 4001(a)(4) be waived based on the following cause:

   Other [*describe and explain cause*]:

   **OBJECTION** [*Identify any disputed items and specify the pertinent facts. If respondent agrees to some relief, attach a proposed order using* LBF 720.90 *available at* https://www.orb.uscourts.gov *under Forms/Local Forms; to be completed by respondent*]:

7. **Documents**:

   **If movant claims to be secured in paragraph 3.b. above,** movant has attached to and filed with this motion a copy of the documents creating and perfecting the security interest, if not previously attached to a proof of claim.

   **If this case is a chapter 13 case and the collateral is real property**, movant has attached to and filed with this motion a postpetition payment history current to a date not more than 30 days before this motion is filed, showing for each payment the amount due, the date the payment was received, the amount of the payment, and how movant applied the payment.

   **RESPONDENT requests movant provide** respondent with the following document(s), if any are marked below, which are pertinent to this objection:

Postpetition payment history, if not required above.

Documents establishing that movant owns the debt described in paragraph 1 or is otherwise a proper party to bring this motion.

Other document(s) [*describe*]:

<u>Movant/Attorney</u>

<u>Respondent /Attorney</u>

*(By signing, the respondent also certifies that the respondent has not altered the information completed by movant.)*

Signature: _____

Name: _____

Address: _____

_____

Email: _____

Phone #: _____

OSB#: _____

Signature:_____

Name:_____

Address:_____

_____

Email:_____

Phone #:_____

OSB#:_____

*You are hereby notified that the creditor is attempting to collect a debt and any information obtained will be used for that purpose.*

**720.80 (12/1/2024)**                    Page 5 of 5

# Claim Detail



Case **2330304**  Debtor1 **ANTHONY S BOWMAN**  Debtor2 **RACHEL L GRIGSBY**
Trustee **GODARE, WAYNE (PORTLAND, OR)**

## CLAIM DETAIL

| Field | Value |
|---|---|
| Claim Number | 0071 |
| Claim Description | VEHICLE |
| Claim Type Code | V |
| Class Type Description | Secured |
| Class Type Code | S |
| Level | 36 |
| Comment | 4B1 2017 MINI COOPER SPLIT //COA 11-05-25 |
| Collateral Description | |
| Reference Number | 0 |
| Claim Start Payment Date | |
| Court Claim Number | 6 |
| Percent Paid | |
| Mortgage Due Date | |
| Final Report Category | VEHICLE |
| Claim Status Description | |
| Claim Filed Date | 02/28/2023 |

## CLAIM AMOUNTS

| Field | Value |
|---|---|
| Claim Amount | $20,332.26 |
| Scheduled Amount | $0.00 |
| Monthly Payment | $0.00 |
| Max Pay Amount | $20,332.26 |
| Collateral Value Amount | $0.00 |
| Principal Paid | $2,567.97 |
| Principal Owed | $17,764.29 |
| Principal Due Amount | $0.00 |
| Interest Rate % | 4.5000 |
| Interest Paid | $2,047.48 |
| Interest Due Amount | $133.24 |
| Trustee Percent | 10.0000 |
| Last Payment Amount | 810.54 |
| Last Payment Date | 09/30/2025 |

## CREDITOR INFORMATION

| Field | Value |
|---|---|
| Creditor Name | WELLS FARGO AUTO |
| Mailing Address | PO BOX 51963  LOS ANGELES, CA 90051 |
| Contact Name | |
| Phone Number | (188) 887-5937 |

## FLAGS

| Field | Value |
|---|---|
| No Check Indicator | |
| Stop Disburse Indicator | |
| Continuing Indicator | N |
| Reserve Indicator | |

## CUSTOMER CLAIM TAG

Payment Type    Claim Identifier:

Comment:

**PAYMENT HISTORY**  **CLAIM HISTORY**

| DATE | CHECK NUMBER | NAME OF PARTY | DESCRIPTION | PAYMENT AMOUNT | TOTAL |
|---|---|---|---|---|---|
| 09/30/2025 | 9007263 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $810.54 | $4,615.45 |
| 09/30/2025 | 9007263 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $69.66 | $3,804.91 |
| 08/29/2025 | 9007186 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $731.55 | $3,735.25 |
| 08/29/2025 | 9007186 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $148.65 | $3,003.70 |
| 06/30/2025 | 9007036 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $804.78 | $2,855.05 |
| 06/30/2025 | 9007036 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $75.42 | $2,050.27 |
| 05/30/2025 | 9006955 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $221.10 | $1,974.85 |
| 05/30/2025 | 9006955 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $659.10 | $1,753.75 |
| 03/31/2025 | 9006800 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $880.20 | $1,094.65 |
| 02/28/2025 | 9006720 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $214.45 | $214.45 |

# Claim Detail



Case **2330304**   Debtor1 **ANTHONY S BOWMAN**   Debtor2 **RACHEL L GRIGSBY**
Trustee **GODARE, WAYNE (PORTLAND, OR)**

## CLAIM DETAIL

| Field | Value |
|---|---|
| Claim Number | 0070 |
| Claim Description | VEHICLE |
| Claim Type Code | V |
| Class Type Description | Secured |
| Class Type Code | S |
| Level | 5 |
| Comment | 4B1 2017 MINI COOPER //COA 11-05-25 |
| Collateral Description | |
| Reference Number | 0 |
| Claim Start Payment Date | 03/15/2023 |
| Court Claim Number | 6 |
| Percent Paid | |
| Mortgage Due Date | |
| Final Report Category | VEHICLE |
| Claim Status Description | |
| Claim Filed Date | 02/28/2023 |

## CLAIM AMOUNTS

| Field | Value |
|---|---|
| Claim Amount | $10,000.00 |
| Scheduled Amount | $30,898.23 |
| Monthly Payment | $683.00 |
| Max Pay Amount | $10,000.00 |
| Collateral Value Amount | $0.00 |
| Principal Paid | $10,000.00 |
| Principal Owed | $0.00 |
| Principal Due Amount | $0.00 |
| Interest Rate % | 4.5000 |
| Interest Paid | $439.01 |
| Interest Due Amount | $0.00 |
| Trustee Percent | 10.0000 |
| Last Payment Amount | 2.15 |
| Last Payment Date | 09/30/2024 |

## CREDITOR INFORMATION

| Field | Value |
|---|---|
| Creditor Name | WELLS FARGO AUTO |
| Mailing Address | PO BOX 51963 |
| | LOS ANGELES, CA 90051 |
| Contact Name | |
| Phone Number | (188) 887-5937 |

## FLAGS

| Field | Value |
|---|---|
| No Check Indicator | |
| Stop Disburse Indicator | |
| Continuing Indicator | N |
| Reserve Indicator | |

## CUSTOMER CLAIM TAG

Payment Type     Claim Identifier:

Comment:

**PAYMENT HISTORY**          **CLAIM HISTORY**

| DATE | CHECK NUMBER | NAME OF PARTY | DESCRIPTION | PAYMENT AMOUNT | TOTAL |
|---|---|---|---|---|---|
| 09/30/2024 | 9006325 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $574.38 | $10,439.01 |
| 09/30/2024 | 9006325 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $2.15 | $9,864.63 |
| 08/30/2024 | 9006248 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $884.51 | $9,862.48 |
| 08/30/2024 | 9006248 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $5.47 | $8,977.97 |
| 07/31/2024 | 9006157 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $881.20 | $8,972.50 |
| 07/31/2024 | 9006157 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $8.78 | $8,091.30 |
| 06/28/2024 | 9006071 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $877.91 | $8,082.52 |
| 06/28/2024 | 9006071 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $12.07 | $7,204.61 |
| 05/31/2024 | 9005987 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $864.25 | $7,192.54 |
| 05/31/2024 | 9005987 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $30.62 | $6,328.29 |
| 03/29/2024 | 9005817 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $869.53 | $6,297.67 |
| 03/29/2024 | 9005817 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $25.34 | $5,428.14 |
| 02/29/2024 | 9005725 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $702.17 | $5,402.80 |
| 02/29/2024 | 9005725 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $192.70 | $4,700.63 |
| 11/30/2023 | 9005464 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $846.11 | $4,507.93 |
| 11/30/2023 | 9005464 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $48.76 | $3,661.82 |
| 09/29/2023 | 9005214 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $822.27 | $3,613.06 |
| 09/29/2023 | 9005214 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $82.38 | $2,790.79 |
| 06/30/2023 | 9004959 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $873.91 | $2,708.41 |
| 06/30/2023 | 9004959 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (INTEREST) | $30.74 | $1,834.50 |
| 05/31/2023 | 9004889 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $901.88 | $1,803.76 |
| 04/28/2023 | 9004827 | WELLS FARGO DEALER SERVICES | DISBURSEMENT CHECK (PRINCIPAL) | $901.88 | $901.88 |

# EXHIBIT 1

SIMPLE INTEREST - OREGON

# Genuine OADA Forms Online @ flywheelnw.com

## RETAIL INSTALLMENT CONTRACT

| Dealer Number | Contract Number | Date 07/30/2022 |
|---|---|---|
| Buyer Name and Address (Include County and Zip Code) ANTHONY S BOWMAN | Co-Buyer Name and Address (Include County and Zip Code) RACHEL GRIGSBY | Creditor-Seller - Name and Address MINI OF PORTLAND 9134 SW CANYON BLVD PORTLAND OR 97225 |

By signing this contract, I am buying the Property described below from you, the Creditor/Seller indicated above, and I agree to the terms stated on this contract, including those stated in the Federal Truth-In-Lending Disclosures.

If the Property is a used vehicle: The information I see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. [La informacion que aparece en la ventanilla de este vehiculo forma parte de este contrato. La informacion contendia en el formulario de la ventinalia anula cualquier prevision que establezca lo contrario y que aparezca en el contrato de venta.]

| Model Yr. | Make & Model | Body Type | Color | Odometer | Vehicle Identification No. | St. & Lic. No | New/Used | No.Cyls. |
|---|---|---|---|---|---|---|---|---|
| 2017 | MINI Cooper S Clubman All4 | Wagon | | 39629 | WMWLU5C38H2E83824 | | USED | 4 |

Use for which purchased: ☒ Personal   ☐ Commercial   ☐ Agricultural

**Insurance and Protection.** If any insurance or protection is checked below, the policies or certificates issued by the Companies named will describe the terms and conditions.

**Optional Insurance.** Credit life insurance, credit disability insurance and other optional insurance are not required to obtain credit and will not be provided unless I sign for them and agree to pay the additional cost. If I have chosen this insurance, the cost is shown in 4a of the Itemization of Amount Financed. Credit life insurance is based upon the payment schedule and the term of this contract. This insurance may not pay all I owe on this contract if I make late payments. Disability insurance covers the original payment amount for the term of this contract. If I make late payments, disability insurance will not pay all of my payments. The amount and coverages are shown in a notice or agreement given on this date.

☐ Credit Life (Buyer ☐ Co-Buyer ☐ Both ☐)   Term N/A  Premium $ N/A  Insurer N/A  Insured N/A
☐ Credit Disability, Accident and Health (Buyer only)   Term N/A  Premium $ N/A  Insurer N/A  Insured N/A
☐ (Type of Other Insurance) N/A   Term N/A  Premium $ N/A  Insurer N/A  Insured N/A

I want the insurance coverage(s) checked above, and I know that it is not required to obtain credit.

N/A Buyer Signature   N/A Date
N/A Co-Buyer Signature   N/A Date

**Optional Gap Contract.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless I sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is show in Item 4e of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.
Term N/A Mos.
N/A Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X N/A

**Required Physical Damage Insurance.** Physical damage insurance is required, but I may obtain it from anyone I choose. If purchased through you from the Insurance Company named below, the cost of this insurance, for the term shown immediately below, is show in 4b of the Itemization of Amount Financed.
Insurance Company N/A   Term N/A months
☐ $ N/A Deductible Collision and either:
  ☐ Full Comprehensive Including Fire, Theft and Combined Additional Coverage
  ☐ $ N/A Deductible Comprehensive including Fire, Theft and Combined Additional Coverage
☐ Fire, Theft and Combined Additional Coverage
Optional, if desired - ☐ Towing and Labor costs  ☐ Rental Reimbursement  ☐ CB Radio Equipment

**Optional Mechanical Breakdown Protection.** The cost of this protection is shown in 4d of the Itemization of Amount Financed.
Company LITHIA VSA
Term 60   $ 200.00 Deductible

**Optional Service Contract 1.** The cost of this protection is shown in 4c of the Itemization of Amount Financed.
Company N/A
Term N/A   $ N/A Deductible

| Optional Service Contract 2. The cost of this protection is shown in 4c of the Itemization of Amount Financed. Company N/A Term N/A  $ N/A Deductible | Optional Service Contract 3. The cost of this protection is shown in 4c of the Itemization of Amount Financed. Company N/A Term N/A  $ N/A Deductible | Optional Service Contract 4. The cost of this protection is shown in 4c of the Itemization of Amount Financed. Company N/A Term N/A  $ N/A Deductible |

**Unless a charge for Liability Insurance is included in the itemization of amount financed, any insurance referred to in this contract does not include coverage for personal liability, bodily injury and property damage caused to others.**

Buyer Initials X  TB   Co-Buyer Initials X  RG

07/30/2022 07:07 pm
OADA FORM 300d.9 (01/20)

DEAL# 42629

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Sale Price (including any accessories) .................................................................... $ 26959.00 (1)
2. Downpayment: (If 2d is negative, enter 0 at 2d and enter the negative amount in line 4k below)
   a. Cash Downpayment ........................................................................................ $ 1000.00
   b. Manufacturer's Rebate (if applicable) .................................................................. $ N/A
   c. Deferred Downpayment (Pickup Pymt), due __N/A__, on which there's no finance charge, of .... $ N/A
   d. Trade-in: Value $ 24000.00   Less owing $ 23931.77   Net $ 68.23 ...................... $ 68.23
      Description of Trade-in: __2018 SUBARU WRX__   Lien Payoff To: __GM Financial__
   Total Downpayment (a+b+c+d) (also put this figure on the Downpayment line in the Total Sale Price box below)
   (Do not include 2d if negative) .................................................................................... $ 1068.23 (2)
3. Unpaid Balance of Cash Sale Price (1-2) ................................................................... $ 25890.77 (3)
4. Charges other than Finance Charge, including Amounts Paid to Others on My Behalf: (* Seller may be retaining a portion of this amount)
   a. Cost of Optional Insurance for the Term of this Contract paid to the Insurance Company(ies) named on Page 1.*
      Credit Life $ __N/A__  Credit Disability, Accident and Health $ __N/A__  Other $ __N/A__ ...... $ N/A
   b. Cost of required Physical Damage Insurance paid to the Insurance Company named on Page 1 (covers damage to the vehicle)* $ N/A
   c. Cost of Optional Service Contract paid to the Company named on Page 1 (covers certain repairs)*...(1) $ N/A  (2) $ N/A  (3) $ N/A  (4) $ N/A
   d. Cost of Optional Mechanical Breakdown Protection paid to the Company named on Page 1 (covers certain repairs)* ......... $ 3908.00
   e. Cost of Optional Gap Contract on page 1* ................................................................. $ N/A
   f. License / Registration Fees paid to government agencies ............... __Registration Fee__ ........ $ 240.50
   g. Title Fees paid to government agencies ....................................................................... $ 116.00
   h. DEQ Certification fee paid to government agencies .......................................................... $ N/A
   i. Title & Registration Processing Fee paid to Seller $ __115.00__, Optional Electronic Filing Fee paid to Seller $ __35.00__  $ 150.00
   j. Sales Tax / Excise Tax paid to government agencies ......................................................... $ 127.06
   k. Other Charges (Seller must identify who will receive payment and describe purpose - include negative trade equity here)*
      to __LITHIA__            for __Lifetime Oil__          $ 899.00
      to __N/A__               for __N/A__                    $ N/A
      to __N/A__               for __N/A__                    $ N/A
      to __N/A__               for __N/A__                    $ N/A
   Total Other Charges and Amounts Paid to Others on My Behalf* ................................................ $ 5440.56 (4)
5. Amount Financed Principal Balance (3+4) * (also put this figure in the Amount Financed box below) ......... $ 31331.33 (5)

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid after I have made all payments as scheduled. | Total Sale Price<br>The total cost of my purchase on credit, including my downpayment of $ 1068.23 is |
|---|---|---|---|---|
| 15.99 % | $ 17893.63 | $ 31331.33 | $ 49224.96 | $ 50293.19 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| N/A | N/A | Due On  N/A |
| 72 | 683.68 | Monthly Beginning 09/13/2022 |
| N/A | N/A | Due On  N/A |
| N/A | N/A | N/A |

**Security.** I am giving a security interest in the goods or property being purchased.

**Late Charge.** For each payment that is not paid within 10 days after its scheduled payment date, I will pay a late charge of 5% of the delinquent installment.

**Prepayment.** If I pay early, I will not have to pay a penalty.

See other contract provisions for any additional information about nonpayment, default and any required repayment in full before the scheduled date.

Payments and Finance Charge Calculation. I will pay you the Total of Payments according to "My Payment Schedule" shown above. Any payment listed on the first line of the schedule is a deferred downpayment which does not bear a Finance Charge. The payments listed on the second line of the schedule are equal consecutive monthly payments which are due on the same day of each month, beginning on the date shown. However, the amount of the last payment will be adjusted to include a Finance Charge figured on the Principal Balance I owed, for the time I owed it. I will pay a Finance Charge on the Principal Balance outstanding each day at the Annual Percentage Rate. The Total of Payments and Finance Charge shown above assume I will pay exactly as agreed. If I pay late or less than the required payment, the Finance Charge is increased. If I pay early or more than the required payment, the Finance Charge is decreased. Changes may take the form of a larger or smaller final payment or, at your option, more or fewer payments of scheduled payments with a smaller final payment. My payments will be applied to earned and unpaid finance charges, principal, and other amounts I owe in any order you choose.

Buyer Initials X __TB__   Co-Buyer Initials X __RG__

07/30/2022 07:07 pm

☐ **Electronic Signature Acknowledgment** (i) agree that (ii) I viewed and read this entire Contract before I signed it, (ii) I signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, and (iv) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. The Seller may convert that authoritative copy to a paper original. That paper copy will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper. You understand that Seller may transfer this Contract to another company in the electronic or paper form. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form.

## CONSUMER PAPER

Notice: The Creditor/Seller intends to sell this contract to (name and mailing address): **WELLS FARGO AUTO**
**PO BOX 997517 SACRAMENTO, CA 95899-7517**
_____, which if it buys the contract, will become the owner of the contract and your creditor. After the sale of this contract, all questions concerning either terms of the contract or payments should be directed to the buyer of the contract at the address indicated above.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain seller's right to receive part of the finance charge.*

**Sales Transaction Subject to Approval of Financing.** The sale of the vehicle to you is subject to a third party lender's agreement to purchase this Retail Installment Contract (Contract) on the exact terms negotiated by the Dealer and the buyer. You agree to provide Dealer with all credit and income information reasonably required, and otherwise exert your best efforts to have the Contract purchased by a third party lender. In the event that a third party lender declines to purchase the Contract, Dealer reserves the right to carry the Contract in-house or to declare the purchase null and void. The Dealer has 14 days from the date the buyer takes possession of the vehicle to sell this Contract and receive final approval of funding by a third party lender or to notify the buyer that the dealer will carry the Contract in-house.

Until purchase of this Contract and final approval of funding by a third party lender or notice that Dealer will carry this Contract in-house, you have no right, title and interest in the vehicle. Immediately, upon oral or written notice to you that the Dealer has declared the purchase null and void, you shall either: (a) immediately tender in cash or cash equivalent, the unpaid purchase price of the vehicle; (b) immediately return the vehicle to the Dealer. In the event you return the vehicle to the Dealer, Dealer shall return the trade-in vehicle, if any, and Dealer shall also refund all deposits and/or down payments made by you to Dealer. You are responsible for the fair market value from damage to and excessive wear and tear on the vehicle or loss of the vehicle that occurs between the date the buyer takes possession of the vehicle and the date the buyer returns the vehicle to Dealer's custody. You shall be charged a reasonable per mile cost for the use of the motor vehicle. Fair market value of repairs of the lost vehicle may be set off by the Dealer against any deposit refund due to you. In the event that you fail or refuse to return the vehicle upon the Dealer's demand, Dealer shall have the rights of a secured creditor under ORS Chapter 79, including the right to self-help repossession. You acknowledge that Dealer has relied upon the representations made by you in your credit application in allowing you to take possession of the vehicle and in selling the vehicle to you.
**IF A THIRD PARTY LENDER OFFERS TO FINANCE THE VEHICLE ON TERMS OR CONDITIONS WHICH ARE DIFFERENT FROM THE TERMS AND CONDITIONS OF THIS CONTRACT, YOU MAY RESCIND THE TRANSACTION AND SHALL NOT BE REQUIRED TO SIGN A NEW CONTRACT UNLESS YOU ELECT TO PROCEED WITH THE SALE.**

## NOTICE TO THE BUYER

**Do not sign this contract before you read it or if it contains any blank space, except that:**
**(1) If delivery of the motor vehicle or mobile home is to be made to you after this contract is signed, the serial number or other identifying information and the due date of the first installment may be filled in at the time of delivery; and (2) If the name of the financing agency is not known at the time the contract is executed, the name of the financing agency may be inserted in the contract on or about the date the name of the financing agency is known. You're entitled to a copy of this contract. You have the right to pay in advance the full amount due and if you do so you may save a portion of the finance charge.**

I consent to receive autodialed and/or pre-recorded telemarketing calls or text messages from or on behalf of **WELLS FARGO AUTO**
at _____. I understand that consent is not a condition of purchase. Signature: _____

**Returned Check Charge.** I agree to pay a charge of $35.00 if any check or electronic payment is returned unpaid.

**The Undersigned acknowledges receipt of a completed copy of this contract and agrees to its terms, including those stated on this contract.**

## RETAIL INSTALLMENT CONTRACT

Buyer Signs _____  Co-Buyer Signs _____
Other Owners - An Other Owner is a person whose name is on the title to the vehicle but does not have to pay the debt evidenced by this contract. The Other Owner hereby grants a security interest in the "Property" (as defined in this contract) to Creditor to secure payment of all amounts owed under this contract, and agrees to all the terms stated on this contract, except that the Other Owner will not be personally liable for amounts owed to Creditor under this contract.

Other Owner sign here **N/A**  Address **N/A**
Creditor Signs **MINI OF PORTLAND**  By _____  Title **FI MANAGER**

Buyer Initials X **TO**  Co-Buyer Initials X _____
07/30/2022 07:07 pm
OADA FORM 300d.9 (01/20)

# TERMS AND CONDITIONS

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

*THE PRECEDING NOTICE APPLIES ONLY TO GOODS OR SERVICES OBTAINED PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD USE.*

1. **Collection Costs.** If I don't make any payment when due according to my payment schedule shown on page 2 of this contract, I will pay you reasonable amounts permitted by law which you spend to collect what I owe or in trying to repossess or sell the Property. I will also pay lawyers' fees, as set by the court, including any for appeals, that are paid or owed to lawyers who are not your salaried employees. I will pay $35.00 each time my check is returned unpaid by my bank.

2. **Ownership and Risk of Loss.** I agree to pay you all I owe under this contract even if the vehicle is damaged, destroyed or missing. I agree not to remove the vehicle from the United States or Canada or to sell, rent, lease or otherwise transfer any interest in the vehicle or this contract without your written permission. I agree not to expose the vehicle to misuse or confiscation. I will make sure your security interest (lien) on the vehicle is shown on the title. If you pay any repair bills, storage bills, taxes, fines, or other charges on the vehicle, I agree to repay the amount when you ask for it.

3. **Security Interest.** I am giving you a security interest in the Property being purchased and any accessories, equipment and replacement parts installed in the vehicle. The security interest also covers (1) insurance premiums and charges for service contracts returned to the Creditor (2) proceeds of any insurance policies or service contract on the vehicle and (3) proceeds of any insurance policies on my life or health which are financed in this contract. This secures payment of all amounts I owe on this contract and any renewal or extension of this contract. It also secures my other agreements in this contract.

4. **Insurance, Liens, and Upkeep.**
   4.1 I'll keep the Property insured by companies acceptable to you with collision and comprehensive insurance, and any other insurance you may require. The insurance policies will have your standard loss payable endorsement and I will deliver the policies to you. No one but you has a security interest or lien on the Property.
   4.2 I'll pay taxes and any debts that might become a lien on the Property, and will keep it free of security interests and liens, other than yours.
   4.3 I'll also keep the Property in good condition and repair.
   4.4 If any of the things agreed to in this Section 4 are not done, you may do them and charge me for the cost of doing so. I'll pay the cost of doing these things either on your demand, or as increased future payments or as an additional payment or payments at the end of the contract, with interest at the contract rate. Even if you do these things, my failure to do them will be a default under Section 8, and you may still use other rights you have based on the default.
   4.5 **Optional Insurance or Service Contracts.** This contract may contain charges for optional insurance or service contracts. If the vehicle is repossessed, I agree that you may claim benefits under these contracts and terminate them to obtain refunds for unearned charges.
   4.6 **Insurance or Service Contract Charges Returned to you.** If any charge for required insurance is returned to you, it may be credited to my account or used to buy similar insurance or insurance which covers only your interest in the vehicle. Any refund on optional insurance or service contracts obtained by you will be credited to my account. I will be notified of what is done. For purposes of the following Warning only, you/your refers to the Buyer and Co-Buyer.

## WARNING

Unless you provide us (Creditor/Seller) with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

5. **Preference Payments.** Any monies you pay or rights you give up because of an asserted preference claim in my bankruptcy will become a part of the indebtedness owing under this contract and, at your option, will (a) be payable on demand, (b) be added to the balance of the contract and be apportioned among and be payable with any installment payments to become due during the remaining term of the contract, or (c) be payable as an additional payment or payments at the end of the contract with interest at the contract rate. Or, in the event of a loss of rights, substitute collateral or performance may be substituted in your sole discretion.

6. **Co-owners or Transfers.** If there are any co-owners of the Property, they are all signing this contract either as a Buyer or as an "Other Owner". I won't sell the Property, lease it, loan it, or give it away.

7. **Protecting Your Interests.** I'll do anything that may now or later be necessary to perfect and continue your security interest in the Property and I'll pay all filing fees and other fees and costs involved.

8. **Default.** It will be a default:
   8.1 If any payment on this contract isn't received when it is due;
   8.2 If I fail to keep any agreement I have made in this contract;
   8.3 If I die or become insolvent or bankrupt;
   8.4 If I have given you a false financial statement, or if I haven't told you the truth about my financial situation, or about my use of the Property;
   8.5 If any creditor tries, by legal process, to take money from any bank account I have or to take any money or property I may have coming from you;
   8.6 If any check or other instrument given as a down payment is dishonored;
   8.7 If any trade-in is subject to any lien other than the one shown on this contract, or the amount owing on it is more than the amount shown;
   8.8 If the Property is sold, leased, loaned, given away, or the Property is lost, stolen, damaged, destroyed, levied upon, seized or attached. If you are required to make any payment in order to release the Property from any levy, seizure or attachment, you may add the amount of such payment to the principal balance which I then owe.
   8.9 If you form a good faith belief that the prospect of my payment or performance is impaired.

9. **Your Rights After Default.** After a default you will have the following rights and may use any one or any combination of them at any time:
   9.1 You may declare the entire contract balance immediately due and payable all at once, without notifying me.
   9.2 You may sue for and recover from me the contract balance, and I will be liable for all reasonable collection costs, including reasonable lawyers' fees, at trial and on appeal, that are paid or owed to lawyers who are not your salaried employees.
   9.3 You may require me to turn the Property over to you at any place you name that is reasonably convenient for both of us, and I will do it if you so demand. I agree that the location where I signed this contract is a reasonably convenient place for me.
   9.4 You may take the Property from me without notice. As long as it does not cause a breach of the peace, you may enter any place where the Property is located to take it. You may also take any property that is not part of the Property, but that happens to be in or on the Property, and may hold such property in safekeeping for its owner for 30 days. If the owner doesn't claim such property, you may donate it to charity, or otherwise dispose of it without notice in any manner and on any terms you consider appropriate.

Buyer Initials X __T.B.__    Co-Buyer Initials X __RL__

07/30/2022 07:07 pm
OADA FORM 300d.9 (01/20)

9.5 You may sell the Property and pay the amount I owe you and above lawful expenses. If the debt evidenced by this contract is in default, you will send me a written notice of sale at least fifteen days before selling the vehicle. If I do not redeem the vehicle by the date on the notice, you can sell it. You will use the net proceeds of the sale to pay all or part of my debt. To the extent permitted by law, the net proceeds of sale will be figured this way: Any late charges and any charges for taking, storing, cleaning, advertising, leasing, and/or selling the vehicle and any reasonable lawyers' fees and court costs will be subtracted from the selling price. If I owe you less than the net proceeds of sale, the difference is owed to me unless you are required to pay it to someone else. For example, you may be required to pay a lender who has given me a loan and also taken a security interest in the vehicle. If I owe more than the net proceeds of the vehicle, I agree to pay you the amount I owe, when you ask for it. If I do not pay the amount I owe when asked, I may also be charged interest at the Annual Percentage Rate applicable to this contract, not to exceed the highest lawful rate, until I pay all I owe.

9.6 You will also have the rights of a secured party under the Oregon Uniform Commercial Code and other laws.

9.7 You may cancel the collision and comprehensive insurance required by subparagraph 4.1.

10. Assignment by Seller. You may transfer your rights under this contract to anyone. If you transfer this contract, the person or entity to which the contract is assigned will have the security interest and the right to insist that I perform my agreements under this contract.

11. No Assignment by Customer. I will not assign my rights under this contract or sell the Property without your written consent. Any attempted assignment without such consent will be void. No assignment or sale will terminate or change my obligations to you under this contract.

12. Waiver of Co-obligor's Rights. I irrevocably waive, disclaim and relinquish all claims against any and all other obligated with me which I have or would otherwise have by virtue of payment of the contract or any part thereof, specifically including but not limited to all rights of indemnity, contribution or exoneration.

13. Multiple Customers. If I'm signing this contract with another person, I'll be jointly and individually obligated to pay the whole contract. You may require that I pay the whole contract without asking the other person to pay. I'll pay the contract even if you and the other person repeatedly agree to renew or extend it for any length of time, revise its terms, or release the security.

14. Payments. I will make payment at any address you specify and payment will not be considered made until received at that address. Any payment of less than the entire amount then due may be credited on the balance without waiving or curing any existing default.

15. Prepayment. I may prepay the unpaid balance of the Amount Financed in full or in part at any time without penalty. If I do so, I must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of payment.

16. Consumer Paper. If the Property is not consumer goods, this contract is not Consumer Paper and is not subject to Oregon Revised Statute Section 83.820, even though the words "Consumer Paper" are printed on this contract.

17. Waiver and Use of Remedies. My timely performance is necessary under this contract. Your waiver of any breach or failure to enforce any provision of this contract is not waiver of any subsequent breach. Your rights and remedies under this contract and under law are cumulative, and may be used in any combination at any time or different times. I agree that you may release the Property or other security without affecting other rights and remedies.

18. Change of Address. I'll give you my new address in writing whenever I move. You may give me any notices by regular mail at the last address I have given you.

19. Credit Information. You are authorized to check my credit, employment, criminal records and histories and to answer questions and provide credit reporting agencies with information about your credit experience with me. I authorize any person or consumer reporting agency to complete and furnish to you any information it may have or obtain in response to your credit inquiries.

20. Title Transfer Fee. If I ask you to consent to a change of registered owner(s) of the Property and you do consent, I agree to pay you a reasonable fee for arranging the change as well as paying any filing fees or other fees paid to officials in connection with the change.

21. If the property collateral is released by you (secured party) for an agreed amount prior to maturity and which amount does not pay the amount due under the contract in full, I agree to continue regular monthly payments under the original terms of this agreement, unless agreed in writing to the contrary.

22. Servicing and collection contacts. I agree that you may try to contact me in writing, by email, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. I also agree that you may try to contact me in these ways at any address or telephone number I provide you, even if the telephone number is a cell phone number or contact results in a charge to me. This section applies to contacts for collections and servicing purposes only. It applies regardless of whether I consent to receive autodialed and/or prerecorded telemarketing calls or text messages as provided on page 3 of this contract.

23. Contract Addendum. This contract is deemed pages 1 through 6 respectively, the front and back of any addenda attached to or incorporated by its terms into this contract are deemed paginated in continuing numerical order thereafter. Additionally, each such numbered page will also be deemed numbered in numerical sequence inclusive of all pages of this contract and any such addenda.

24. Oregon Law Applies. This contract will be governed by Oregon Law.

25. **WARRANTIES SELLER DISCLAIMS. I understand that any warranties on the vehicle sold are those made by the manufacturer. I am purchasing the vehicle "as is" from you and you are not offering any warranties, either express or implied, including any implied warranties of merchantability or fitness for a particular purpose of the vehicle. Except for the warranty of the manufacturer, if any, I assume entire risk as to the quality and performance of the vehicle, and if the vehicle proves defective after the purchase, I assume the entire cost of all necessary servicing or repair. I also understand that you will not be responsible for incidental or consequential damages arising from loss of use, loss of time, inconvenience or commercial loss.**

26. Gap Waiver or Gap Coverage. In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the options of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

Buyer Initials X __TB__   Co-Buyer Initials X __Rb__

# REPURCHASE ASSIGNMENT

FOR VALUE RECEIVED, [X] without recourse [ ] with recourse, except as provided herein and in any written agreement regarding purchase of contracts executed by Seller and Assignee and now in effect, Seller hereby endorses and assigns to **WELLS FARGO AUTO**
("Assignee") this contract and all right, title and interest of Seller in and to the Property described in the contract.

Seller represents and warrants that this contract arose from the sale of the Property; that the title to the Property was at the time of sale vested in Seller free of all liens and encumbrances and that a security interest in the Property is now vested in Seller subject only to the right of Buyer and any Other Owner (hereafter collectively referred to as "Customer"); that the property is as represented to Customer by Seller; that this contract is valid and enforceable against Customer, and that there is unpaid the full amount represented as being owing on it, which amount is subject to no defense, set-off, or counterclaim whatsoever, or want of legal capacity on the part of Customer. Seller shall indemnify and hold harmless the Assignee against all claims and defenses, whether valid or invalid, relating to the Property or acts or omissions of Seller including, without limitation, any based on the Federal Consumer Credit Protection Act or other state or federal law.

As a partial consideration of the purchase of this contract by Assignee, Seller hereby agrees not to assert against Assignee any claim, lien or encumbrance which Seller now has or may hereafter have with respect to the Property.

This assignment shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors and assigns of Seller.

If the Property described in this contract is of a type for which a certificate of title may be obtained, Seller agrees to perfect a security interest in the Property in favor of Assignee within twenty days of the date of this contract as shown on page one and to provide Assignee with a certificate of title showing Assignee as first priority security interest holder within 30 days of the date of this contract. If Seller fails to comply with the immediately preceding sentence, Seller will, immediately upon Assignee's demand, repurchase the contract for the amount owing on the contract, even if the Property is not repossessed or tendered to Seller.

Dated **07/30/2022**      **MINI OF PORTLAND**      By _____      **GENERAL MANAGER**
                          (Type Firm Name)          (Seller)        (Title)

## ASSIGNMENT AND GUARANTY

FOR VALUE RECEIVED, the undersigned Seller hereby endorses and assigns to _____
("Assignee") this contract and all monies to become due thereunder and also grants, bargains, sells and conveys to Assignee all of the right, title and interest of the Seller in and to the Property described in this contract.

In consideration of the purchase of this contract by Assignee, Seller guarantees the payment of the unpaid balance evidenced thereby and agrees to pay upon demand that unpaid balance if Buyer or any Other Owner (hereafter collectively referred to as "Customer") in this contract defaults in the performance of this contract, or in any of the warranties are found untrue. The undersigned warrants that Seller has title to this contract and has a valid security interest in the Property; that Seller has the right to make this assignment and transfer; that the Property is free from any liens or encumbrances; that this contract is valid and enforceable against Customer, and that there is unpaid on it the full amount represented as being owing on it, which amount is subject to no defense, set-off, or counterclaim, whatsoever, or want of legal capacity on the part of Customer. Seller hereby consents that Assignee, or its successors or assigns, may, without notice to Seller, extend the time for payments under this contract, waive the performance of such terms and conditions of the contracts as it may determine, and make any reasonable settlement under the contract without affecting or limiting Seller's liability as guarantor.

For the purpose of inducing Assignee to purchase this contract Seller submits the accompanying Customer's application which the Seller believes to be true, and declares that the contract arose from the bona fide sale of the Property described in this contract, and that the Property has been delivered into possession of Customer. In further consideration of the purchase of this contract, Seller agrees that if the Property is returned by or repossessed from Customer, Assignee, its successors or assigns, may recover from Seller the balance due on the contract or may sell the Property, apply the proceeds on the balance due and recover any deficiency from Seller; in either of such events recovering also a reasonable attorney's fee and costs of suit and expense, if any, paid or incurred by Assignee in the repossession or sale, or both, of the Property. In the event of suit against Customer Seller guarantees, in addition, the payment of costs and reasonable attorneys' fees to Assignee, its successors or assigns, and in case suit or action is instituted upon this guaranty Seller promises to pay such sum as the court may adjudge reasonable as attorneys' fees in such suit or action, including any appeal. Seller shall indemnify and hold harmless Assignee against all claims and defenses, whether valid or invalid, relating to the Property or acts or omission of Seller including, without limitation, any based on the Federal Consumer Credit Protection Act or other state or federal law.

The terms of the Assignment and Guaranty shall be effective notwithstanding anything to the contrary contained in any of the provisions of the contract, Dealer Repurchase Agreement or other agreement executed in connection with it.

This assignment and Guaranty shall inure to the benefit of and be binding upon Seller's heirs, executors, administrators, successors and assigns.

If the Property described in this contract is of a type for which a certificate of title may be obtained, Seller agrees to perfect a security interest in the Property in favor of Assignee within twenty days of the date of this contract as shown on page one and to provide Assignee with a certificate of title showing Assignee as first priority security interest holder within 30 days of the date of this contract. If Seller fails to comply with the immediately preceding sentence, Seller will, immediately upon Assignee's demand, repurchase the contract for the amount owing on the contract.

Dated _____      **N/A**      By _____
                 (Type Firm Name)      (Seller)      (Title)

Buyer Initials X **TB**   Co-Buyer Initials X _____

07/30/2022 07:07 pm
OADA FORM 300d.9 (01/20)

# EXHIBIT 2

WELLS FARGO AUTO
PO BOX 997517
SACRAMENTO CA  95899-7517

## OREGON VEHICLE CERTIFICATE OF TITLE

OREGON DRIVER AND MOTOR VEHICLE SERVICES CERTIFIES THE PARTY IS LISTED AS OWNER OF THE DESCRIBED VEHICLE. DOCUMENTS FILED WITH DMV SHOW THE VEHICLE IS SUBJECT TO THE OWNERSHIP INTERESTS SPECIFIED

| TITLE NUMBER | | | | ISSUE DATE 08/24/2022 | CONTROL NUMBER | |
|---|---|---|---|---|---|---|
| YEAR 2017 | MAKE MNNI | STYLE SW | MODEL CLU | VEHICLE IDENTIFICATION NUMBER WMWLU5C38H2E83824 | EQUIPMENT NUMBER | |
| | | | | | SURVIVORSHIP Y/N | |

OWNER/LESSEE
BOWMAN, ANTHONY STEVEN
GRIGSBY, RACHEL

ODOMETER READING: 39,629
ODOMETER DATE: 07/30/2022
ODOMETER MESSAGE:

### TITLE BRANDS

The title Brand printed below indicates the history, condition, or circumstances of the vehicle for which this title has been issued. Please see back of title for more information.

- NONE -

USE THIS SECTION WHEN THE ONLY CHANGE IS TO REMOVE A SECURITY INTEREST. FOR ANY OTHER CHANGES, SEE INSTRUCTIONS ON REVERSE

If there is no change in owners as shown above AND all security interest holders have released interest, one registered owner must sign and date here, if not completing a separate application for title. In addition, if your address has changed, cross out the old address and write the new address and county of residence on the front of the title. Mail the title and the fee to DMV  1905 Lana Ave NE  Salem OR  97314

SIGNATURE (DOES NOT RELEASE INTEREST)
X

To release interest in the vehicle, complete the reassignment on back of the title

SECURITY INTEREST HOLDER/LESSOR

SIH    WELLS FARGO AUTO
        PO BOX 997517
        SACRAMENTO CA 95899-7517

SIGNATURE AND COUNTERSIGNATURE OF SECURITY INTEREST HOLDER OR LESSOR RELEASING ALL INTEREST
X

SIGNATURE AND COUNTERSIGNATURE OF SECURITY INTEREST HOLDER OR LESSOR RELEASING ALL INTEREST
X

**SEE REVERSE OF TITLE FOR APPLICATION INSTRUCTIONS**

VOID WITHOUT CHAIN LINK WATERMARK